1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11   DAVID VAN GILDER,                     )   Case No.  CV 14-5909-SP
                                           )
12                  Plaintiff,             )
                                           )
13          v.                             )   MEMORANDUM OPINION AND
                                           )   ORDER
14                                         )
     CAROLYN W. COLVIN, Acting             )
15   Commissioner of Social Security       )
     Administration,                       )
16                                         )
                    Defendant.             )
17                                         )
     _____ )
18

19

20                                      **I.**

21                              **INTRODUCTION**

22          On August 8, 2014, plaintiff David Van Gilder filed a complaint against

23   defendant, the Commissioner of the Social Security Administration

24   ("Commissioner"), seeking a review of a denial of supplemental security income

25   ("SSI") and disability insurance benefits ("DIB").  Plaintiff and defendant have

26   consented to proceed for all purposes before the assigned Magistrate Judge

27   pursuant to 28 U.S.C. § 636(c).  The parties have fully briefed the matters in

28   dispute, and the court deems the matter suitable for adjudication without oral

                                           1

argument.

Plaintiff presents five disputed issues for decision:  (1) whether the Administrative Law Judge ("ALJ") erred at step three; (2) whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC"); (3) whether the ALJ properly considered plaintiff's credibility; (4) whether additional evidence submitted to the Appeals Council presents a basis for reversal; and (5) whether the application should be remanded given plaintiff's subsequent successful application for SSI.  Plaintiff's Memorandum in Support of Relief Requested in Plaintiff's Complaint ("P. Mem.") at 4-13; Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-16.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err at step three, the ALJ properly assessed plaintiff's RFC, the ALJ provided clear and convincing reasons to discount plaintiff's credibility, the evidence later submitted to the Appeals Council does not provide a basis for reversal, and the subsequent disability finding did not require remand of the instant application.  Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-five years old on the alleged disability onset date, has a high school education.  AR at 67, 70, 76, 343.  He has past relevant work as a computer electronic mechanic, user support analyst, and construction worker. *Id.* at 22-23, 61, 75.

On March 12, 2012, plaintiff filed concurrent applications for DIB and SSI benefits due to ankle problems, back pain, diabetes, migraines, hernias, depression, insomnia, thyroid problems, memory problems, psoriasis, and arthritis,

alleging an onset date in both applications of March 18, 2008. *Id*. at 67, 78, 90, 187, 194. The applications were denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 117, 121, 125, 132.

On September 20, 2013, the ALJ held a hearing. *Id*. at 1-29. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id*. at 5-21. The ALJ also heard testimony from Gregory Stewart Jones, a vocational expert. *Id*. at 22-27. In a written decision dated November 13, 2013, the ALJ denied plaintiff's claim for benefits. *Id.* at 52-62.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since March 18, 2008, the alleged onset date. *Id.* at 54.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: back disease, history of left ankle fracture status post-surgery with post-traumatic osteoarthritis, arthralgias (joint pain), and myalgias (muscle pain). *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 55.

The ALJ then assessed plaintiff's RFC,[1] and determined that plaintiff had the RFC to perform light work, with the limitations that plaintiff: could walk and stand no more than four hours out of an eight-hour day; could sit without restrictions; could no more than occasionally climb, kneel, crawl, bend, crouch,

_____

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

and stoop; could never balance; could never walk on uneven terrain, climb ladders, or work at heights; and must use a cane for support for any distances greater than 100 feet. *Id.* at 56.

The ALJ found, at step four, that plaintiff was capable of performing his past relevant work as a user support analyst, specifically noting this role did not require performance of the work-related activities precluded by plaintiff's RFC. *Id.* at 61. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id.* at 62.

Plaintiff filed a timely request for review of the ALJ's decision on December 5, 2013. *Id.* at 47. On March 20, 2014, while plaintiff's request for review was pending before the Appeals Council, plaintiff filed a new application for SSI benefits, which was subsequently granted on September 5, 2014. *See* P. Mem., Ex. A. Plaintiff claims the subsequent application was filed pursuant to Social Security Ruling ("SSR")[2] 11-1p because he received a new diagnosis of neuropathy after the ALJ's decision. P. Mem. at 3.

Meanwhile, on May 22, 2014, the Appeals Council denied the request for review. AR at 41-47. However, on May 26, 2014, before the Appeals Council's denial letter was received, plaintiff's counsel submitted new evidence for the Appeals Council to consider. P. Mem. at 3; AR at 309-310. On June 13, 2014, the Appeals Council vacated its earlier May 22, 2014 denial to consider new information, and then again denied plaintiff's request for review. AR at 36.

Plaintiff's counsel wrote the Appeals Council on June 19, 2014, indicating

---

[2]   "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d at 1202 n.1 (internal citations omitted).

none of the additional information submitted on May 26, 2014 had been referenced in the June 13, 2014 denial or marked as part of the record, and submitted the materials again. *Id.* at 308. On June 26, 2014, plaintiff again wrote the Appeals Council requesting that the evidence submitted May 26, 2014 be incorporated into plaintiff's exhibit file. *Id*. at 306. On July 3, 2014, the Appeals Council vacated its earlier June 13, 2014 action to again consider new information, and again denied plaintiff's request for review. *Id.* at 30-34. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

1  affirmed simply by isolating a specific quantum of supporting evidence.'"

2  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

3  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

4  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

5  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th

6  Cir. 1992)).

7  **IV.**

8  **DISCUSSION**

9  **A.    The ALJ  Properly Found Plaintiff's Impairments Did Not Meet or**

10  **Equal Listings 1.02, 1.03, 1.04, or 1.06**

11  Plaintiff claims the ALJ incorrectly found his condition did not meet or

12  equal a Listing.  P. Mem. at 4-7; *see also* Plaintiff's Brief in Reply to D. Mem.

13  ("Reply") at 2-4.  Specifically, plaintiff contends his condition either meets or

14  equals Listings 1.02A, 1.03, 1.04, or 1.06.  P. Mem. at 4.

15  At step three, Social Security regulations provide that a claimant is disabled

16  if he or she meets or medically equals a listed impairment set forth in the

17  Listings. 20 C.F.R. §§ 416.920(a)(4)(iii) ( "If you have an impairment(s) that

18  meets or equals one of our listings . . . we will find that you are disabled"),

19  416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is

20  equal to a listed impairment(s), we will find you disabled without considering your

21  age, education, and work experience").  In other words, if a claimant meets or

22  equals a Listing, he or she will be found disabled at this step "without further

23  inquiry." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  In such case,

24  there is no need for the ALJ to complete steps four and five of the sequential

25  process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

26  "To *meet* a listed impairment, a claimant must establish that he or she meets

27  each characteristic of a listed impairment relevant to his or her claim."

28

6

*Tackett*, 180 F.3d at 1099 (emphasis in original).

To establish that an impairment is medically equivalent to a listed impairment, it is the claimant's burden to show that his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original), superseded by statute on other grounds; see 20 C.F.R. § 416.926(a)-(b); SSR 83-19 (an impairment is "equivalent" to a listing only if a claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 514 ("A finding of equivalence must be based on medical evidence only."). "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 416.926(b)(2). The ALJ is not required to state why a claimant fails to satisfy every section of a listing as long as the ALJ adequately summarizes and evaluates the evidence. *Lewis*, 236 F.3d at 513.

Here, plaintiff has failed to demonstrate that he met or equaled Listings 1.02A, 1.03, 1.04, or 1.06 during the relevant period.

## 1.    Listing 1.02A

In order to be considered presumptively disabled under Listing 1.02A, a claimant must demonstrate that (1) he has major dysfunction of a major peripheral weight-bearing joint (i.e., hip, knee, or ankle) characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion

1  or other abnormal motion of the affected joint; (2) medical imaging reflects

2  narrowing, destruction, or ankylosis of the affected joint; and (3) the dysfunction

3  results in an "inability to ambulate effectively, as defined in [Listing

4  1.00(B)(2)(b)(2)]."[3]  Listing 1.02A; *see Hamilton v. Astrue*, 2010 WL 3748744,

5  at *5 (C.D. Cal. Sept. 22, 2010).

6      Plaintiff contends he met his burden under this standard.  P. Mem. at 6.

7  Specifically, plaintiff argues the following evidence in the administrative record

8  demonstrates an inability to ambulate effectively: (1) a February 7, 2007 treatment

9  note indicating his left ankle fracture required two surgeries (AR at 320); (2) a

10 February 13, 2007 treatment note in which plaintiff reported daily moderate to

11 severe ankle pain and an inability to stand more than an hour or walk more than

12 half an hour (AR at 331); (3) a June 29, 2011 treatment note indicating plaintiff

13 had a disability placard, which plaintiff argues "suggests an inability to ambulate

14 throughout a parking lot" (AR at 332); (4) a February 6, 2009 treatment note

15 indicating a fusion procedure was planned (AR at 333); (5) a July 2013

16 prescription for plaintiff to be evaluated for a wheelchair or other gait aid (AR

17 at 404); and (6) an undated treatment report, printed by Olive View Medical

18 Center ("Olive View") on January 8, 2014, indicating plaintiff used a walker or

19

20      [3]  "To ambulate effectively, individuals must be capable of sustaining a

21 reasonable walking pace over a sufficient distance to be able to carry out activities

22 of daily living. They must have the ability to travel without companion assistance

23 to and from a place of employment or school.  Therefore, examples of ineffective

   ambulation include, but are not limited to, the inability to walk without the use of

24 a walker, two crutches or two canes, the inability to walk a block at a reasonable

25 pace on rough or uneven surfaces, the inability to use standard public

   transportation, the inability to carry out routine ambulatory activities, such as

26 shopping and banking, and the inability to climb a few steps at a reasonable pace

27 with the use of a single hand rail.  The ability to walk independently about one's

   home without the use of assistive devices does not, in and of itself, constitute

28 effective ambulation."  Listing 1.00(B)(2)(b)(2).

1  cane (AR at 435).  P. Mem. at 5.

2        Moreover, plaintiff claims the ALJ and Appeals Council omitted a

3  discussion of Listing 1.02A, despite plaintiff's counsel mentioning the Listing

4  during closing argument at the administrative hearing and again in an April 29,

5  2014 letter to the Appeals Council.  Reply at 2; *see* AR at 28, 302.  Lastly,

6  plaintiff argues the ALJ did not adequately consider the impact of plaintiff's cane

7  when determining whether plaintiff met or equaled Listing 1.02A, or when

8  determining plaintiff's RFC, and cross references Listing 1.00(J)(4) to support his

9  argument that cane use must be considered.[4]  P. Mem. at 4.

10        Though plaintiff identifies these excerpts of evidence, he provides no

11  explanation for how this is evidence of an impairment at least equal in severity and

12  duration to each criteria articulated in Listing 1.02A.  *See Tackett*, 180 F.3d at

13  1099; *see also* 20 C.F.R. § 416.926(a).  As mentioned, plaintiff "must present

14  medical findings equal in severity to *all* the criteria for the one most similar listed

15  impairment."  *Sullivan*, 493 U.S. at 531.  Here, that would require plaintiff to

16  establish an impairment meeting or medically equivalent to all of the following: a

17  gross anatomical deformity and chronic joint pain and stiffness of the left ankle,

18  with signs of limitation of motion or other abnormal motion, in addition to medical

19  

_____

20  [4]  "When an individual with an impairment involving a lower extremity or

21  extremities uses a hand-held assistive device, such as a cane, crutch or walker,

22  examination should be with and without the use of the assistive device unless
   contraindicated by the medical judgment of a physician who has treated or

23  examined the individual.  The individual's ability to ambulate with and without

24  the device provides information as to whether, or the extent to which, the
   individual is able to ambulate without assistance.  The medical basis for the use of

25  any assistive device (e.g., instability, weakness) should be documented.  The

26  requirement to use a hand-held assistive device may also impact on the
   individual's functional capacity by virtue of the fact that one or both upper

27  extremities are not available for such activities as lifting, carrying, pushing, and

28  pulling."  Listing 1.00(J)(4).

imaging that reflects narrowing, destruction, or ankylosis of the ankle, all of which results in an inability to ambulate effectively. *See* Listing 1.02A. Even if the evidence plaintiff cites could demonstrate a major dysfunction of the left ankle joint, none of that evidence constitutes acceptable medical imaging demonstrating satisfactory impairments of the ankle.

Moreover, the ALJ's summary of the evidence related to plaintiff's ankle limitations was sufficient to support the conclusion that plaintiff can ambulate and therefore did not meet or equal the listing. AR at 56-61; *see Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990) (ALJ did not err in failing to state what evidence supported finding that claimant failed to meet or equal a listed impairment because four page, single-spaced "evaluation of the evidence" was "an adequate statement of the 'foundations on which the ultimate factual conclusions [were] based'"). Importantly, the ALJ's summary specifically discussed, among other factors: (1) plaintiff's subjective reports of pain post-surgery (AR at 57-58); (2) a March 2008 exam indicating stable range of motion in the left ankle, compared with a May 2012 evaluation indicating zero range of motion (AR at 57-58, 331, 333, 344-346); (3) a consultative evaluation suggesting that plaintiff use a cane for distances greater than 100 feet, in part because plaintiff's gait appeared slightly antalgic (limping) with the use of a large, long walking stick, but otherwise appeared normal and without evidence of tremor or ambulation (AR at 58, 345-346); (4) plaintiff's use of a 3-wheel cart or cane (AR at 17, 56); and (5) plaintiff's daily activities, including driving and walking, and performing household chores such as preparing meals, taking out the trash, and unloading the dishwasher (AR at 61). *See Worth v. Astrue*, 330 F. App'x 642, 644 (9th Cir. 2009) ("although [claimant's] ability to walk is somewhat limited, such limitations are not sufficiently 'extreme' to render [claimant] unable 'to ambulate effectively,' as required to equal listing 1.02(A)").

10

1   In addition, the ALJ discussed diagnostic imaging of plaintiff's ankle, in

2   particular a February 8, 2013 report by Thomas Zung, M.D., which revealed only

3   moderate degenerative changes with compression of the left tarsal talar base, no

4   acute fractures, subluxation, lystic lesions, or evidence of bony erosions or

5   abnormal soft-tissue densities in the left ankle.  AR at 60, 402.

6   Plaintiff also argues that the ALJ's RFC findings that he should "never"

7   walk on uneven terrain and use a cane for distances greater than 100 feet establish

8   an inability to walk effectively.  P. Mem. at 7.  But the ALJ found that plaintiff

9   should avoid walking on uneven terrain and use a cane for distances over 100 feet

10   as part of his work, not that he could not do so at all.  AR at 56; *Moreno v. Astrue*,

11   444 Fed. Appx. 163, 164 (9th Cir. 2011) (finding claimant's limitation to walking

12   on even terrain did not establish inability to walk effectively because RFC "did not

13   state that [claimant] was incapable of walking on uneven surfaces, only that he

14   should avoid doing so in his employment"); *Nance v. Colvin*, 2014 WL 3347027,

15   at *4 (finding that inability to walk on uneven terrain, by itself, does not establish

16   inability to walk effectively under Listing 1.03).  And use of a single cane over

17   certain distances does not by itself establish inability to effectively ambulate.  *See*

18   Listing 1.00(B)(2)(b)(2) (giving as an example of ineffective ambulation "the

19   inability to walk without the use of . . . two canes").  Further, plaintiff testified he

20   was able to stand for two hours and could tolerate standing and walking up to four

21   hours in an eight hour period (AR at 12, 18), and he stated in a March 24, 2012

22   Function Report that he could prepare his own meals, take his laundry to his

23   mother's house once a week, and go grocery shopping once or twice a week (AR

24   at 61, 254-255).  Thus, contrary to one of the Listing's examples of ineffective

25   ambulation, plaintiff was able "to carry out routine ambulatory activities, such as

26   shopping."  Listing 1.00(B)(2)(b)(2).

27   Finally, the ALJ also discussed the findings outlined in a May 9, 2012

28

11

written report following a consultative examination performed by Ursula Taylor, M.D. AR at 57-58, 341-346. In particular, the ALJ noted Dr. Taylor considered plaintiff's subjective complaints of joint and back pain, in addition to "some supporting evidence, such as mildly decreased range of lumbar motion and moderate deformity of the left ankle." AR at 58, 342, 344-345. Dr. Taylor nonetheless found plaintiff could lift and carry no more than twenty pounds occasionally and ten pounds frequently, secondary to back pain and cane dependence. AR at 58, 346. Among other findings, Dr. Taylor also opined plaintiff could walk and stand no more than four hours out of an eight hour day, sit without restrictions, and should use a cane for distances over 100 feet. *Id.*

Accordingly, the ALJ did not err in determining plaintiff can ambulate and thus did not meet or equal Listing 1.02A here, despite plaintiff's assertions to the contrary. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

### 2. Listing 1.03

In order to meet Listing 1.03, a claimant must establish "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)(2)], and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." Listing 1.03.

The ALJ's opinion does not specifically consider Listing 1.03. AR at 52-62. Here, plaintiff only cites to an October 26, 2012 Olive View report in which the physician notes plaintiff had two surgeries on his left ankle to support the argument that the ALJ erred by not considering Listing 1.03 and that substantial evidence exists to establish disability under that Listing. *See* P. Mem. at 6; Reply

1   at 3-4; AR at 384.  Plaintiff appears to argue that Listing 1.03 applies simply

2   because plaintiff had two surgeries and therefore cannot ambulate effectively

3   under Listing 1.00(B)(2)(b)(2).  P. Mem. at 6.

4        Here, plaintiff's unsupported citation has not met his burden of establishing

5   the two surgeries cited constitute the reconstructive surgeries needed to satisfy

6   disability under Listing 1.03.  *See Tackett*, 180 F.3d at 1099; *see also Sullivan*,

7   493 U.S. at 531.  Further, for the reasons discussed in Section A.1 above, plaintiff

8   has not sufficiently shown he was unable to ambulate effectively under Listing

9   1.00(B)(2)(b)(2).  As such, in light of the medical evidence cited and discussed in

10  the ALJ's opinion, the ALJ did not err in determining plaintiff was not disabled

11  under Listing 1.03.  *See Gonzalez*, 914 F.2d at 1200-01.

12      **3.**   **Listing 1.04**

13       The ALJ specifically discussed Listing 1.04 and found plaintiff's

14  impairments, either individually or in combination, failed to meet or equal the

15  criteria specified in Listing 1.04.  AR at 55-56.  Plaintiff again argues he has

16  satisfied his burden of establishing disability under each Listing's particular

17  criteria and that the ALJ erred by failing to consider whether plaintiff's back and

18  ankle impairments combined to meet or equal this Listing.  P. Mem. at 6-7; Reply

19  at 3-4.  The court disagrees.

20       Listing 1.04 requires a finding of disability for an individual who has a

21  "[d]isorder[ ] of the spine," such as "herniated nucleus pulposus, spinal

22  arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

23  arthritis, or vertebral fracture," that results in compromise of a nerve root or the

24  spinal cord, and which is accompanied by the additional requirements set forth

25  under section 1.04A, 1.04B, or 1.04C.  Listing 1.04.  Section 1.04A requires

26  "[e]vidence of nerve root compression characterized by neuro-anatomic

27  distribution of pain, limitation of motion of the spine, motor loss (atrophy with

28

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing 1.04A. Section 1.04B requires "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging." Listing 1.04B. Finally, section 1.04C requires "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)(2)]." Listing 1.04C.

Here, although the ALJ explicitly considered Listing 1.04, plaintiff only makes a general statement that new evidence subsequently submitted to the Appeals Council indicating plaintiff had degenerative disk disease "undercuts" the ALJ's findings regarding plaintiff's failure to establish disability under Listing 1.04. P. Mem. at 6-7. But plaintiff again provides no specific citation or discussion as to how such evidence changes plaintiff's impairments to now meet or equal all the criteria under Listing 1.04. Moreover, plaintiff makes no specific contention that the newly submitted evidence at issue meets Listing 1.04A, 1.04B, or 1.04C in particular.

A review of the evidence subsequently submitted to the Appeals Council indicates at least some of that evidence does include findings of back-related impairments. *See* P. Mem., Ex. B at 9. In a treatment note from Olive View dated April 3, 2014, Dr. Aksone Nouvong, a treating podiatrist, made the following findings after an apparent review of images of plaintiff's spine: (1) accentuated normal lumbar spine lordosis; (2) minimal degenerative changes of lower lumbar spine with relative narrowing of intervertebral disk at L3-4 level; (3) relative mild anterior compressions of L1, L4, and L5 vertebrae, but "ages are indeterminate" and "[c]linical correlation is needed"; (4) minimal discogenic disease at L5-S1

14

level; (5) no subluxation, osteolytic lesion or bony erosions; and (6) surgical clips in medial right upper quadrant. *Id.*

But while there are some objective medical findings that arguably might be minimally related to some of the requirements of Listing 1.04A, 1.04B, or 1.04C, plaintiff has failed to offer any explanation of how these impairments meet or equal any of the requirements particular to any section of Listing 1.04. For example, plaintiff does not attempt to explain how evidence of "mild anterior compressions" may constitute "nerve root compression characterized by neuro-anatomic distribution of pain" as required by Listing 1.04A. Moreover, as far as the court can tell, Dr. Nouvong's findings do not explicitly establish "spinal arachnoiditis" or "lumbar spinal stenosis" as required by Listings 1.04B and 1.04C, respectively. As such, without more, plaintiff has provided no basis for reversal of the ALJ's decision here.

### 4. Listing 1.06

Listing 1.06 states that a claimant is disabled if he has a fracture of the femur, tibia, pelvis, or tarsal bones, with: (1) "[s]olid union not evident on appropriate medically acceptable imaging and not clinically solid" and (2) an "[i]nability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)(2)], and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." Listing 1.06.

Here, plaintiff argues the ALJ failed to cite any evidence demonstrating that plaintiff had a solid union, and cites to evidence of an MRI he argues establishes that plaintiff had a nonunion of the fractured ankle. Reply at 3; AR at 383. In addition, plaintiff repeats the same failed argument already advanced with the other Listings at issue that he has satisfied his burden of demonstrating an inability to ambulate effectively under Listing 1.00(B)(2)(b)(2). Reply at 3. Plaintiff cites to a report from Philip W. Anderson, M.D., reviewing an MRI of plaintiff's lower

1  left extremity.[5]  There, Dr. Anderson noted a "[c]omminuted fracture of the talus

2  with internal fixation and what appears to be union of the fracture lines except for

3  a vertically oriented sagittal fracture line in the head of the talus which remains

4  visible."  AR at 383.

5       Even assuming plaintiff had a nonunion of his talus bone, substantial

6  evidence supported a finding that plaintiff could ambulate effectively, as discussed

7  above in Section A.1.  Accordingly, his impairment did not satisfy the criteria

8  specified under Listing 1.06.

9  **B.    The ALJ's RFC Assessment Is Supported by Substantial Evidence**

10      Plaintiff argues the ALJ improperly determined plaintiff's RFC.  P. Mem. at

11 7-8; Reply at 4-6.  Specifically, plaintiff contends that: (1) the ALJ failed to

12 account for concentration deficits noted during a psychological evaluation by Rosa

13 Colonna, Ph. D., a clinical psychologist; (2) the RFC assessment does not

14 adequately consider plaintiff's use of a cane; and (3) the RFC assessment does not

15 account for plaintiff's reports of swelling limitations in his left ankle.  *Id.*

16      **1.    Dr. Colonna's Findings**

17      On May 1, 2012, Dr. Colonna performed a complete psychological

18 evaluation of plaintiff.  AR at 348.  The ALJ gave great weight to Dr. Colonna's

19 opinions, and discussed her findings at length.  *Id.* at 58-59, 61.  Among other

20 findings, Dr. Colonna ultimately concluded plaintiff would be able to understand,

21 remember, and carry out short, simplistic instructions without difficulty, and

22 would be able to make simplistic work-related decisions without special

23 supervision, but that plaintiff presented with a mild inability to understand,

24 remember, and carry out detailed instructions.  *Id.* at 352.

25

26 ───────────────

27      [5]    While this particular MRI report appears undated, the court notes that
   plaintiff's citation comes from medical records from Canyon Medical Group dated

28 August 31, 2008 through May 11, 2009.  *See* AR at 376-383.

16

1      Though the ALJ noted Dr. Colonna's finding that plaintiff's attention and

2  concentration were moderately diminished, the ALJ also found plaintiff had "no

3  limitation" in the functional area of concentration, persistence, or pace. *Id.* at 55,

4  59.  Plaintiff argues Dr. Colonna's finding that plaintiff's attention and

5  concentration were moderately diminished constitutes probative evidence that the

6  ALJ failed to adequately discuss in the context of plaintiff's RFC assessment.  P.

7  Mem. at 7; Reply at 4-5.

8      "It is not necessary to agree with everything an expert witness says in order

9  to hold that his testimony contains 'substantial evidence.'" *Magallanes v. Bowen*,

10 881 F.2d 747, 755 (9th Cir. 1989) (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th

11 Cir. 1988) (internal citations omitted)).  And as plaintiff correctly asserts, the ALJ

12 was not required to discuss evidence in the record that is not probative as to the

13 RFC.  Reply at 4-5; *see Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95

14 (9th Cir. 1984) ("The [Commissioner] . . . need not discuss all evidence presented

15 . . . Rather, [the Commissioner] must explain why significant probative evidence

16 has been rejected." (citation and internal quotation marks omitted)).  Here,

17 plaintiff only makes a general and unsupported connection between "the medical

18 evidence of [p]laintiff's pain" and the "associated deficits of concentration" to

19 support an argument that Dr. Colonna's assessment is significant and probative

20 evidence.  Reply at 5.

21     The ALJ provides a detailed summary of Dr. Colonna's examination

22 alongside a discussion of plaintiff's subjective testimony, both from his March

23 2012 Function Report and from Dr. Colonna's examination, and treatment records

24 during that time period.  *See* AR at 58-59.  The ALJ noted several inconsistencies

25 both in plaintiff's statements and his conduct that cast doubt on plaintiff's

26 implication here that his concentration and attention deficits are linked to the

27 intensity of pain felt from his symptoms.  In particular, plaintiff made conflicting

28

claims about getting along with others, and despite plaintiff's claims of not being able to work due to constant pain, plaintiff only sporadically sought treatment for his allegedly debilitating conditions. *Id.* at 59.

Thus, the record does not demonstrate Dr. Colonna's finding that plaintiff had moderately diminished attention and concentration constitutes significant and probative evidence. *See Vincent*, 739 F.2d at 1394-95. And to the extent the ALJ even rejected that evidence, the ALJ provided sufficient grounds for rejecting the limitations plaintiff raises here. *See Magallanes*, 881 F.2d at 755 (ALJ need not state "I reject the treating physician's opinions because . . ." so long as the record reveals specific, legitimate inferences that may be drawn from ALJ's opinion justifying decision not to adopt physician's opinion); *see also Bickford v. Astrue*, 2010 WL 4220531, at *11 (D. Or. 2010) ("[S]o long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace."). Accordingly, the ALJ's RFC assessment that did not include specific limitations relating to plaintiff's alleged diminished attention and concentration was supported by substantial evidence here. *See AR* at 56.

### 2. **Plaintiff's Use of a Cane**

Plaintiff next argues the ALJ failed to adequately consider plaintiff's use of a cane when determining plaintiff could perform a limited range of light work in the RFC assessment, and cites to SSR 83-10 to support this proposition.[6] P. Mem. at 7; AR at 56. Despite plaintiff's assertion to the contrary, there is no conflict

---

[6] SSR 83-10 specifies that light work requires "frequent lifting and carrying of objects weighing up to 10 pounds," and "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours out of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b).

between plaintiff's RFC and SSR 83-10.  Here, the ALJ found plaintiff had the RFC to perform a limited range of light work, with a particular standing and walking limitation of no more than four hours in an eight-hour day.  AR at 56; *see Jones v. Colvin*, 2014 WL 657914, at *7 (C.D. Cal. Feb. 19, 2014) (four-hour standing/walking limitation did not conflict with SSR 83-10 because ALJ did not determine that the plaintiff could perform a full range of light work, but simply a range of light work).  Plaintiff's four-hour limitation falls within the "frequent" activity range described by SSR 83-10.[7]  *See id.* (four-hour standing/walking limitation did not conflict with SSR 83-10's "frequent" definition because it fell within the "one-third" and "two-thirds" range); *Roybal v. Colvin*, 2013 WL 4768033, at *15 (C.D. Cal. Sept 4, 2013) ("the ALJ's RFC . . . limitation to 4 hours of standing or walking fits comfortably into the range of frequent activity for light jobs").

Plaintiff's RFC requiring use of a cane for distances greater than 100 feet also does not conflict with SSR 83-10's description of light work as requiring frequent lifting and carrying of objects weighing up to ten pounds.  Although certainly when using a cane plaintiff would have only one free hand, many ten-pound objects can be carried with one hand.  Moreover, plaintiff's RFC only specified use of a cane for longer walks, thus allowing for use of two hands to lift and carry objects over short distances.

In addition, substantial evidence supports the ALJ's determination that plaintiff's RFC would permit a return to plaintiff's past work as a user support analyst.  AR at 61.  The work of a user support analyst is defined by the Dictionary of Occupational Titles ("DOT") as skilled, sedentary work.  *Id.*; *see* DOT No. 032.262-0 10.  Plaintiff notes vocational expert ("VE") Gregory Stewart Jones

---

[7]    SSR 83-10 defines "frequent" as "occurring more than one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6.

19

testified at plaintiff's hearing that plaintiff performed this role at a medium exertional level, and then appears to argue that the ALJ failed to consider how plaintiff could perform work as a user support analyst in light of his past exertional level despite not having full use of one of his hands due to the cane. AR at 23; P. Mem. at 7; Reply at 5.

But the VE specifically testified, and the ALJ consequently found, that plaintiff's combination of impairments would only permit work as a user support analyst as generally performed, not at plaintiff's prior exertional level.  AR at 24, 61.  In light of the rest of the ALJ's findings when determining plaintiff's RFC, therefore, it was reasonable for the ALJ to conclude that plaintiff's need to "use a cane for any distances greater than 100 feet" would not preclude plaintiff from returning to his past relevant work as a user support analyst as generally performed.  *Id.* at 56; *see* SSR 96-9P, 1996 WL 374185, at *7 ("[I]f a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.").

Thus, the ALJ reasonably concluded plaintiff could perform this past relevant work, and plaintiff fails to credibly show otherwise.

### 3.    Plaintiff's Swelling Limitations

Plaintiff also argues the ALJ failed to account for plaintiff's swelling in his left ankle when determining plaintiff's RFC because objective medical evidence supported plaintiff's subjective reports of limitations due to swelling.  P. Mem. at 8; Reply at 5.

Plaintiff cites to his own statements made during the administrative hearing, noting he has to frequently elevate the ankle because of swelling, in addition to treatment notes indicating a swollen left ankle.  AR at 8, 13, 345, 353, 384.  But plaintiff does not attribute any functional limitations to this swelling, making it

unclear how the RFC fails to account for the swelling or alternatively which accommodations should have been incorporated into the RFC.  Moreover, the ALJ found plaintiff's testimony not credible to the extent it was inconsistent with the RFC, which plaintiff challenges and is discussed in Section C below.  *See* AR at 57-61.  In addition, the ALJ specifically addressed plaintiff's own testimony regarding the need to elevate his foot due to the ankle swelling, and noted other medical evidence indicating swelling and edema in the same area.  AR at 56, 58, 60.  Thus, without more, plaintiff has not shown the ALJ's RFC assessment fails to take into consideration the limitations of plaintiff's ankle swelling or that the ALJ's ultimate RFC determinations are unsupported by substantial evidence.

**C.    The ALJ Properly Considered Plaintiff's Credibility**

Plaintiff argues the ALJ failed to properly consider his credibility.  P. Mem. at 8-9.  Specifically, plaintiff contends the ALJ inaccurately characterized evidence when assessing plaintiff's credibility, and failed to consider a written statement by plaintiff's mother.  *Id.*

The ALJ must make specific credibility findings, supported by the record.  SSR 96-7p, 1996 WL 374186, at *2.  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a claimant's credibility, including:  (1)

1  ordinary techniques of credibility evaluation such as a claimant's reputation for

2  lying; (2) the failure to seek treatment or follow a prescribed course of treatment;

3  and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039

4  (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

5        At the first step, the ALJ found plaintiff's medically determinable

6  impairments could reasonably be expected to cause the symptoms alleged. AR at

7  57. At the second step, because the ALJ did not find any evidence of malingering,

8  the ALJ was required to provide clear and convincing reasons for discounting

9  plaintiff's credibility. The ALJ discounted plaintiff's credibility here in part

10  because: (1) plaintiff alleged in his applications for benefits that he stopped

11  working in March 2008 because of his conditions, but was also receiving

12  unemployment benefits at that time, which required him to declare he was willing

13  and able to work; (2) treatment records from 2009 through 2013 suggest plaintiff

14  only sporadically sought treatment for conditions he alleged were severe and

15  constant; and (3) his activities of daily living were inconsistent with his alleged

16  symptoms. *Id.* at 57-61.

17        The ALJ found plaintiff's credibility unreliable in part because his

18  statements and allegations in his applications for benefits were directly

19  contradicted by his allegation of being willing and able to work for the purposes of

20  receiving unemployment benefits. *Id*. at 60. The ability to work while allegedly

21  disabled is a clear and convincing reason to find a claimant less credible. *See*

22  *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (a claimant's employment and

23  seeking of work while allegedly disabled are proper grounds for discounting his

24  testimony); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming the

25  ALJ's adverse credibility finding due, in part, to claimant's holding himself out as

26  available to work). Plaintiff argues the ALJ misconstrued what was actually "an

27  unsuccessful work attempt" but offers no further explanation, or citation to the

28

1    record, to support this contention.

2        In contrast, substantial evidence supports the ALJ's finding that plaintiff's

3    credibility is unreliable due in part to inconsistent allegations in the various

4    benefit applications.  Plaintiff's own testimony acknowledges both collecting

5    unemployment and seeking disability benefits during 2011 and 2012, despite

6    noting in a disability report that he stopped working in March 2008 because of his

7    various conditions.  AR at 11, 282.  Moreover, the ALJ noted plaintiff also

8    presented inconsistencies in his testimony regarding the reasons he stopped

9    working in 2011.  *Id.* at 60-61.  Plaintiff testified he stopped working for a

10   computer printer company because he could no longer lift the printers, but told Dr.

11   Colonna he stopped because he was laid off.  *Id.* at 6-7, 349.

12       The ALJ also discounted plaintiff's credibility because the alleged severity

13   of his symptoms was not supported by the objective medical evidence, in part due

14   to plaintiff inconsistently seeking out medical treatment for his various

15   impairments.  *Id.* at 57-58; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

16   2001) (lack of corroborative objective medical evidence may be one factor in

17   evaluating credibility).  Plaintiff asserts he only sporadically sought treatment due

18   to limited finances.  Reply at 8.  As an initial matter, plaintiff appears to raise this

19   claim for the first time in his Reply, which is not the proper place to raise

20   additional grounds for relief.  *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir.

21   2010) ("arguments raised for the first time in a reply brief are waived").

22       In any event, the ALJ detailed how plaintiff's treatment records from at least

23   2008 to 2011 coincided mainly with plaintiff's requests for help with his disability

24   benefits applications.  AR at 57, 333, 335-336.  The ALJ also noted plaintiff

25   received at least one referral to a medical clinic following a physician examination

26   but did not appear to pursue the treatment, yet in other instances demonstrated an

27   ability to regularly obtain prescription narcotic medication.  *Id.* at 57, 332-333; *see*

28

1  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (finding it appropriate to

2  consider "an unexplained, or inadequately explained, failure to seek treatment").

3       The ALJ's also found plaintiff less credible because his daily activities were

4  inconsistent with his alleged limitations.  AR at 61; *see Tommasetti*, 533 F.3d at

5  1039 (inconsistency between a claimant's alleged symptoms and his daily

6  activities may be a clear and convincing reason to find a claimant less credible);

7  *Bunnell*, 947 F.2d at 346-47 (same).  In a March 24, 2012 Function Report,

8  plaintiff stated he could prepare his own meals, take his laundry to his mother's

9  house once a week, and go grocery shopping once or twice a week.  AR at 61,

10  254-255.  The ALJ also noted that plaintiff's mother stated in a March 26, 2012

11  Third Party Function Report that plaintiff could drive a car and help unload the

12  dishwasher and take out the trash.  *Id.* at 273.

13       Nonetheless, plaintiff argues the ALJ committed legal error by failing to

14  adequately consider plaintiff's mother's written statements regarding his

15  symptoms and ability to work in the Third Party Function Report.  P. Mem. at 9.

16  Aside from one comment regarding a note made by plaintiff's mother in her Third

17  Party Function Report, the ALJ did not specifically address plaintiff's mother's

18  statements.  AR at 52-62.

19       In cases in which the ALJ recognized the lay witness testimony, the issue is

20  whether the ALJ sufficiently articulated or justified the rejection of that lay

21  testimony.  *See Molina v. Astrue*, 674 F.3d 1104, 1115-17 (9th Cir. 2012);

22  *Valentine v. Astrue*, 574 F.3d 685, 693-94 (9th Cir. 2009).  On the other hand, it is

23  error for an ALJ to fail to discuss or even acknowledge lay witness testimony.  *See*

24  *Molina*, 674 F.3d 1115 (finding ALJ erred because "lay witness testimony cannot

25  be disregarded without comment") (citation and internal quotation marks omitted).

26  In these cases in which the ALJ did not even acknowledge the existence of lay

27  witness testimony, the question is whether this error is harmless.  Such error is not

28

harmless unless this court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, although the ALJ's opinion contains one reference to plaintiff's mother's testimony, defendant states the ALJ did not specifically address her statements, thereby appearing to take the position that the ALJ erred by failing to discuss or acknowledge plaintiff's mother's testimony. D. Mem. at 10. But defendant argues this error is harmless because the ALJ's reasons for discounting plaintiff's credibility would also apply to his mother's testimony. *Id.* (citing *Valentine*, 574 F.3d at 694 (finding ALJ's rejection of lay witness testimony, based in part on the same reasons for discounting the plaintiff's own allegations, constituted "germane reasons" for rejecting lay witness testimony)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*, 236 F.3d at 511) (inconsistency with medical evidence is a germane reason for discrediting the testimony of lay witnesses).

Despite the single reference to plaintiff's mother's testimony, the court agrees the ALJ erred in failing to discuss that testimony, but concludes such error was harmless. As discussed above, the ALJ offered clear and convincing reasons for rejecting plaintiff's testimony, and in light of the similarity between both testimonies regarding the severity of plaintiff's pain, activities of daily living, and other limitations, those reasons are sufficient to also reject plaintiff's mother's testimony. *See Smolen*, 80 F.3d at 1281; AR at 5-21, 252-271, 273-280, 299.

Indeed, it is well settled that a court must "not reverse for errors that are 'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1117 (citations omitted). In particular, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's

well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the ALJ's error in discounting the lay witness testimony is harmless. *Id.* The lay testimony does not need to be identical, only similar. *Valentine*, 574 F.3d at 694 (where "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay] testimony"). That is the case here. Accordingly, as in *Molina*, the ALJ's error here was harmless because the same evidence cited by the ALJ as discrediting plaintiff's testimony also discredits the duplicative statements of plaintiff's mother. *See Molina*, 674 F.3d at 1122.

In sum, the reasons for finding plaintiff less credible provided by the ALJ were clear and convincing and supported by substantial evidence. As such, the ALJ did not err in discounting plaintiff's credibility.

**D.   The Appeals Council Did Not Err In Denying Review**

Plaintiff asserts the Appeals Council failed to consider the additional evidence submitted and failed to incorporate a copy of that evidence into the administrative record. P. Mem. at 3, 9-10. Plaintiff attached the new evidence to his memorandum as Exhibit B, and provided copies of these documents to defendant's counsel prior to filing the memorandum. *Id.* at 3. Exhibit B contains a letter from plaintiff's counsel, dated April 16, 2014 and addressed to Olive View, requesting a copy of plaintiff's medical records there from February 22, 2014 up to the present. *See* P. Mem., Ex. B at 1. Exhibit B then contains plaintiff's Olive View medical records through April 23, 2014, when Olive View printed them.[8] *Id.* at 2-25. Lastly, Exhibit B contains a May 19, 2014

---

[8]   The court notes that Exhibit B, as organized, makes it difficult to determine the earliest date of any records submitted from Olive View during the period plaintiff's counsel requested in the April 16, 2014 letter. As far as the court can

1   questionnaire from Dr. Aksone Nouvong, a treating podiatrist, titled "Physical

2   Medical Source Statement, 1.00 listings." *Id.* at 26-30.

3          In its denial of plaintiff's request for review, the Appeals Council found the

4   new evidence plaintiff submitted did not relate back to the relevant period and did

5   not consider it. AR at 31. Therefore, the Appeals Council did not make the new

6   evidence a part of the record. Defendant asserts the Appeals Council properly

7   declined to consider the additional evidence plaintiff submitted. D. Mem. at 11-

8   12.

9          As an initial matter, the court has jurisdiction to address plaintiff's claim

10  that the Appeals Council failed to consider the additional evidence submitted by

11  plaintiff. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]e

12  properly may consider the additional materials because the Appeals Council

13  addressed them in the context of denying Appellant's request for Review."); *see*

14  *also Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (citations omitted)

15  (stating a district court "consider[s] on appeal both the ALJ's decision and the

16  additional material submitted to the Appeals Council").

17          To the extent plaintiff alleges the Appeals Council rejected the additional

18  evidence and failed to incorporate it into the administrative record in violation of

19  various provisions of the Hallex manual (*see* P. Mem. at 3), plaintiff is not entitled

20  to relief. *See Roberts v. Comm'r of Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir.

21  2011) (stating the Hallex manual "does not carry the force of law and is not

22  binding upon the agency") (internal citation omitted).

23          The Appeals Council will consider "any new and material evidence

24  submitted to it which relates to the period on or before the date of the

25  _____

26  tell, though plaintiff's counsel requested files beginning February 22, 2014,

    Exhibit B only contains records spanning March and April 2014, with a particular

27  April 3, 2014 note referencing a February 7, 2014 CT scan. *See* P. Mem., Ex. B at

28  9.

administrative law judge hearing decision." 20 C.F.R. § 404.976(b)(1); *see also* § 416.1476(b) ("[T]he Appeals Council will consider the evidence in the administrative law judge hearing record and any new and material evidence only if it relates to the period on or before the date of the administrative law judge hearing decision.").  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011); *see also Borrelli v. Comm'r of Soc. Sec.*, 570 Fed. Appx. 651, 2014 WL 1492736, at *1 (Apr. 17, 2014) (remand necessary when "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing").  When evidence is submitted which does not relate to the period on or before the date of the ALJ's decision, "the Appeals Council will return the additional evidence . . . with an explanation as to why it did not accept the additional evidence."  20 C.F.R. § 404.976(b)(1).  A claimant does not need to show good cause before submitting new evidence to the Appeals Council.  *Brewes*, 682 F.3d at 1162.  Here, the relevant period was on or before November 13, 2013, the date of the ALJ's decision.  20 C.F.R. § 416.1476(b)(1); AR at 62.

It is unclear which portions of the additional evidence plaintiff argues relate back to the period on or before November 13, 2013.  In his memorandum, plaintiff states "the medical records that . . . should have been associated with the administrative record are attached," indicating plaintiff believes the Appeals Council should have incorporated all of the evidence contained in Exhibit B, and therefore implying that all of the evidence in Exhibit B relates back to the relevant time period.  P. Mem. at 3.  Later in the memorandum, plaintiff specifically

1  references March 2014 EMG results, which plaintiff claims resulted in a diagnosis

2  of neuropathy, and "[p]odiatry records from April 2014,"  which plaintiff argues

3  indicates plaintiff had bilateral lower extremity edema, lumbar degenerative disk

4  disease, and decreased strength and range of motion of the left ankle.  *Id.* at 10.

5  Plaintiff then argues, without citation, that "the addition of these documents at the

6  Appeals Council level of review reveals that the ALJ's decision is not supported

7  by substantial evidence," but provides no basis for how those particular pieces of

8  evidence relate back to the period on or before the ALJ's decision.  *Id.*

9        In a March 20, 2014 letter to the Appeals Council, plaintiff's counsel sought

10  approval for plaintiff to file a new application for benefits while his previous

11  action was pending before the Appeals Council, pursuant to SSR 11-1p.  AR at

12  311.  SSR 11-1p allows a claimant to request Appeals Council permission to file a

13  new disability claim before review of the pending claim has been completed if the

14  claimant has "additional evidence that does not relate to the period on or before

15  [the ALJ's decision]" that also "shows a new critical or disabling condition."  SSR

16  11-1p, 2011 WL 3962767, at *3.  Indeed, as plaintiff's counsel noted in the March

17  20, 2014 letter, the basis of plaintiff's request to file a new claim "is that [plaintiff]

18  has a new neurological diagnosis that has not previously been adjudicated,"

19  conceding the purported March 2014 neuropathy diagnosis does not relate back to

20  on or before the ALJ's decision.  AR at 311.  But plaintiff's counsel then states

21  "this new diagnosis may in fact relate back in time" and cites to  20 C.F.R.

22  § 404.970(b), which, similar to 20 C.F.R. §§ 404.976(b)(1) and 416.1476(b),

23  allows the Appeals Council to consider "new and material evidence . . . only

24  where it relates to the period on or before the date of the [ALJ's] decision."  *Id.* at

25  312; *see* 20 C.F.R. § 404.970(b).

26        As mentioned, plaintiff's papers only provide unsupported and conclusory

27  allegations that the March 2014 EMG results relate back to the period on or before

28

the November 13, 2013 ALJ decision and therefore should have been considered by the Appeals Council.[9]  P. Mem. at 10.  Although plaintiff's counsel left open the possibility that these EMG results could relate back in the March 20, 2014 letter to the Appeals Council, plaintiff has not shown how these records are material to plaintiff's impairments during the relevant time period considered by the ALJ.  Thus, this additional evidence does not relate back to the relevant period of the ALJ's decision.  Moreover, the court reaches the same conclusion regarding the April 2014 podiatry records, as without more evidentiary support offered by plaintiff, there is no basis for finding the Appeals Council erred in failing to make them part of the administrative record.

Plaintiff contends in his Reply that the May 19, 2014 questionnaire from Dr. Nouvong relates back to the relevant period.  Reply at 9-10.  Plaintiff argues the Appeals Council erred in failing to consider this evidence because Dr. Nouvong's handwritten note indicates she had been treating plaintiff several times over the past nine months, which plaintiff notes dates back to August 2013 and thus falls

---

[9]  Moreover, as far as the court can tell, plaintiff's assertion that March 2014 treatment notes of an EMG resulted in a diagnosis of "severe ankle and subtalar joint arthritis with neuropathy" is unsupported by the evidence submitted in Exhibit B.  *See* P. Mem. at 10.  Exhibit B contains Olive View treatment notes, dated April 4, 2014, dictated and electronically signed by Dr. Nastaran Rafiei, a neuromuscular attending physician following two pages charting results of an EMG test performed March 19, 2014.  P. Mem., Ex. B at 2-4.  Those notes also indicate Dr. Jeremy Cholfin, a clinical neurophysiology fellow, participated in some fashion in the evaluation of plaintiff's March 19, 2014 EMG test.  *Id.* at 4.  Dr. Rafiei states plaintiff's case "is an abnormal study" and that there is "electrodiagnostic evidence of a moderate sensorimotor polyneuropathy with predominantly axonal features," but then notes "clinical correlation [is] recommended."  *Id.*  Exhibit B also contains an April 3, 2014 treatment note electronically signed by Dr. Saieh Khademi that says "Patient's Diagnosis(es): severe ankle and subtalar joint arthritis."  *Id.* at 7.  However, no similar diagnosis of neuropathy can be found there or anywhere else in Exhibit B.

within the period on or before the ALJ's November 13, 2013 decision.  Reply at 10; *see* P. Mem., Ex. B at 26-27.

When asked to indicate work-related exertional limitations within an eight-hour day, Dr. Nouvong opined plaintiff could sit six hours and walk and stand less than two hours.  P. Mem., Ex. B at 27.  Dr. Nouvong also opined plaintiff could only lift or carry less than ten pounds on both an occasional and frequent basis, and would have limited push and pull ability in his upper extremities.  *Id.* at 27-28.  Regarding plaintiff's non-exertional postural limitations, Dr. Nouvong indicated plaintiff could occasionally stoop, kneel, crouch, and balance, but never crawl or climb.  *Id.* at 28-29.  Dr. Nouvong also opined plaintiff would have occasional manipulative limitations reaching and handling.  *Id*. at 29.  Lastly, Dr. Nouvong estimated these limitations would cause plaintiff to miss work three times per month.  *Id.*  According to plaintiff, this questionnaire establishes the continued existence of a listing level impairment dating back to the period of the ALJ's November 13, 2013 decision, as well as a lesser RFC.  Reply at 9-10.

Plaintiff's error contention fails for several reasons.  First, it is unclear how directly Dr. Nouvong's May 19, 2014 questionnaire relates to the time period before the ALJ's decision on November 13, 2013.  20 C.F.R. §§ 404.976(b)(1); 416.1476(b).  As noted, Dr. Nouvong stated she had been treating plaintiff several times over the past nine months, which would date back to August 2013.  P. Mem., Ex. B at 26-27.  Dr. Nouvong contributes several treatment notes in the Olive View medical records plaintiff submitted as part of Exhibit B, all of which span February 2014, at the earliest, through April 2014.  But the administrative record contains medical records from Olive View documenting plaintiff's treatment there during the relevant time period, dated from February 8, 2013 to September 4, 2013, thus encompassing August 2013.  AR at 384-403.  Notably, Dr. Nouvong does not appear in any of those records.  *See id.*

1    On the other hand, the administrative record also contains a separate set of

2    medical records from Olive View, Exhibit 12F, which is described as claimant-

3    supplied evidence dated from October 26, 2012 to October 22, 2013.  AR at 431-

4    435.  In fact, Exhibit 12F contains two pages of treatment notes dated in October

5    2013 (AR 431, 434), two undated pages (AR 433, 435), and a progress note from

6    registered nurse Berta Mendoza, dated December 19, 2013, which would fall after

7    the date of the ALJ's November 2013 decision (AR at 432).  Dr. Nouvong is listed

8    indirectly as an admitting physician only on this December 19, 2013 note, and on

9    no other Olive View records within the administrative record.  *See* AR at 384-403,

10    431-435.  Thus, the court is hesitant to find Dr. Nouvong's May 2014

11    questionnaire evidences as clear a link as plaintiff asserts to Dr. Nouvong's

12    purported treatment of plaintiff during the time period relevant to the ALJ's

13    decision, but recognizes at least some evidence exists, however minimal.

14    Further, in the May 19, 2014 questionnaire, Dr. Nouvong diagnosed

15    plaintiff with "advanced left ankle osteoarthritis," stating the basis for the

16    diagnosis as an x-ray and CT scan.  P. Mem., Ex. B at 26-27.  Neither the x-ray

17    nor CT scan were dated, though the court notes Dr. Nouvong signed a treatment

18    record on April 3, 2014 that refers to a February 7, 2014 CT scan.  *Id*. at 9-10.  But

19    the ALJ's decision already recognized and considered plaintiff's severe

20    impairment of post-traumatic osteoarthritis in his left ankle following surgery.  AR

21    at 54.  To the extent this new evidence leads to a diagnosis also present during the

22    time period of the ALJ's decision, then Dr. Nouvong's questionnaire may relate to

23    the relevant period because it permits a comparison of the changes to plaintiff's

24    ankle.  *See Martinez v. Astrue*, 2014 W L 310387, at *19 (N.D. Cal. Jan. 28, 2014)

25    (X-rays and MRIs taken "just days and weeks after the ALJ rendered his

26    decision . . . relates to the period before the ALJ's decision because it permits a

27    comparison of the changes to Plaintiff's spine that occurred after the 2007 MRIs

28

1 were taken."); *Oliver v. Astrue*, 2013 WL 211131, at *23–25 (N.D. Cal. Jan. 16,

2 2013) (evidence submitted to the Appeals Council related to the time before the

3 ALJ's decision because Asperger's Disorder is "a developmental disorder, not a

4 condition which suddenly appeared after hearing."). But here, unlike the x-rays

5 and MRIs taken not long after the ALJ's decision in *Martinez*, plaintiff submitted

6 evidence of a May 2014 document referencing an undated x-ray and a CT scan

7 taken nearly three months after the ALJ's decision. Moreover, Dr. Nouvong does

8 not state plaintiff's particular limitations and other symptoms, as described in the

9 May 2014 questionnaire, specifically applied as early as November 2013.

10      Despite plaintiff's assertion that these records are retrospective in nature,

11 plaintiff has provided no basis for why Dr. Nouvong's opinions were not

12 predicated simply on the most recent x-ray and CT scan, as the questionnaire

13 appears to indicate. Thus, because the court can find no clear basis for discerning

14 what specific information from Dr. Nouvong's questionnaire bears on the degree

15 of plaintiff's functional limitations prior to November 13, 2013, as opposed to

16 plaintiff's limitations after that time period, the court is hesitant to find the

17 questionnaire "relates back" to that relevant time period as clearly as plaintiff

18 contends.

19      Second, even assuming the new evidence – the purported March 2014

20 diagnosis of neuropathy, the April 2014 podiatry records, and Dr. Nouvong's May

21 19, 2014 questionnaire – should have been included in the record for purposes of

22 judicial review, the ALJ's decision was supported by substantial evidence and was

23 free of legal error. *See Borrelli*, 2014 WL 1492736, at *1; *see also Taylor*, 659

24 F.3d at 1232 (The reviewing court's role is "to determine whether, in light of the

25 record as a whole, the ALJ's decision was supported by substantial evidence and

26 was free of legal error."). To warrant remand, plaintiff must demonstrate "a

27 'reasonable possibility' that the new evidence would have changed the outcome of

28

1    the administrative hearing." *Mayes*, 276 F.3d at 462.

2         Plaintiff has not made the requisite showing here.  As discussed, plaintiff

3    does not cite to specific records within Exhibit B to support his claim of a March

4    2014 neuropathy diagnosis, and the only records the court could locate contain

5    physician notes that fall short of a firm diagnosis of neuropathy.  *See* P. Mem.,

6    Ex. B at 2-4, 7.  Similarly, plaintiff did not provide specific citations to support his

7    claim that April 2014 podiatry records within Exhibit B indicate plaintiff had

8    bilateral lower extremity edema, lumbar degenerative disk disease, and decreased

9    strength and range of motion of the left ankle.  P. Mem. at 10.  Nonetheless, the

10   records contained in Exhibit B are not necessarily inconsistent with the ALJ's

11   decision.  The ALJ's RFC assessment considered plaintiff's severe impairments,

12   including back disease.  *See* AR at 54, 57-58.  The ALJ also discussed plaintiff's

13   treatment at Olive View in February 2013, where examinations revealed diffuse

14   non-pitting edema.  *Id*. at 60.  The ALJ found plaintiff had the severe impairment

15   of osteoarthritis in the left ankle, and discussed the treatment of plaintiff's ankle

16   from March 2008 to at least July 2013.  *Id*. at 54, 57, 60.  And while Dr.

17   Nouvong's questionnaire provides exertional limitations that differ from those

18   determined by the ALJ, those differences are slight, and appear based on a

19   diagnosis stemming from imaging tests performed several months after the period

20   of the ALJ's decision, which only revealed a diagnosis of left ankle osteoarthritis

21   already present during the relevant time period.  AR at 56; P. Mem., Ex. B at 26-

22   30.  The ALJ's decision is therefore supported by substantial evidence.

23        In sum, plaintiff has failed to demonstrate that new medical evidence

24   submitted to the Appeals Council after the ALJ decision relates back to the period

25   under consideration in that decision, and moreover how that evidence would be

26   likely to affect the decision's outcome.  Thus, the Appeals Council did not err in

27   its treatment of the new evidence.

28

**E.      A Subsequent Successful Application Is Not Reason for Remand**

Plaintiff argues remand is warranted because the Social Security Administration awarded him disability benefits in a subsequent claim.  P. Mem. at 10-12.  Plaintiff contends this subsequent award constitutes new, material evidence.  *Id.* at 10.

As discussed above, the ALJ denied plaintiff's claim on November 13, 2013.  AR at 49-66.  Plaintiff filed a request for a review of the decision and submitted additional evidence dated after the decision date.  *See id* at 47, 306-310. On July 3, 2014, the Appeals Council denied plaintiff's request for review, stating specifically that the evidence concerned a time after the ALJ's decision and was therefore irrelevant.  *Id.* at 31.  The Appeals Council returned the evidence to plaintiff and informed him he could use it in a new claim, and that if he were to file a new claim within six months after receipt of its denial of his request for review, he could use December 12, 2013, the date of his request for review, as the date of his new claim.  *Id.*  Plaintiff attached the notice of award of supplemental security income, dated September 5, 2014, which indicates he filed his subsequent application for benefits on March 20, 2014, the same date the Agency determined he became eligible for SSI.  P. Mem., Ex. A at 1-2.

Two Ninth Circuit cases provide guidance as to when a case should be remanded in order to reconcile a subsequent grant of disability benefits with a prior decision denying benefits.  In *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001), the plaintiff's initial disability application was denied on April 9, 1996 but a subsequent application was granted on February 26, 1999, finding the plaintiff was disabled as of April 10, 1996.  *Id*. at 826-27.  The Ninth Circuit held that remand of the initial application was not warranted because the "second application involved different medical evidence, a different time period, and a different age classification."  *Id*. at 827.

1    In contrast, the Ninth Circuit in *Luna v. Astrue*, 623 F.3d 1032 (9th Cir.

2    2010), ruled that, where there is a "reasonable possibility" that the subsequent

3    grant of benefits was based on new evidence not considered by the ALJ as part of

4    the first application, "further consideration of the factual issues is appropriate to

5    determine whether the outcome of the first application should be different." *Id.*

6    at 1035.  There, the court could not conclude whether the two decisions were

7    "irreconcilable or inconsistent" because there was only one day between the denial

8    of the first application and the disability onset date of the second application, and

9    it was uncertain whether the plaintiff may have presented different medical

10   evidence to support the two applications or there might be some other reason to

11   explain the change. *Id.*

12   This case differs from *Luna* in material respects.  First, in *Luna* the

13   Commissioner stipulated to remand, but disagreed with the plaintiff on the terms

14   of remand. *Id.* at 1034.  In this case, the Commissioner does not stipulate to

15   remand and does not concede there is any legal or factual basis for reversing the

16   ALJ's decision on the first application.  D. Mem. at 13-14; *see Mulay v. Colvin*,

17   2015 WL 1823261, at *7 (C.D. Cal. Apr. 22, 2015).

18   Second, in *Luna* there was no opportunity for the claimant to submit the

19   medical evidence supporting the second application to the district court.  The

20   initial ALJ decision was issued on January 27, 2006 and the second application

21   was granted on August 20, 2007 while the case was on appeal. *Luna*, 623 F.3d

22   at 1034.  The facts here are different.  Plaintiff only submitted the notice of award,

23   but not the subsequent application itself, nor the accompanying medical evidence

24   to support it – unless the evidence was the records in Exhibit B.  Though plaintiff

25   enclosed Exhibit B, plaintiff only generally states those records were attached

26   because they should have been made part of the administrative record, and never

27   states the records in Exhibit B also made up all or part of the evidence submitted

28

in plaintiff's subsequent March 20, 2014 disability application.  *See* P. Mem. at 3.
If plaintiff in fact submitted additional evidence with his March 20, 2014
application, nothing prevented plaintiff from submitting the medical evidence
supporting the second application so this court could determine whether the two
applications are inconsistent or irreconcilable.  Plaintiff should not be able to
"engineer" a remand by failing to present evidence in his control and where he
knows what medical evidence was submitted to the agency in the second
application.  *See Parra*, 481 F.3d at 746 ("The claimant bears the burden of
proving steps one through four, consistent with the general rule that at all times,
the burden is on the claimant to establish his entitlement to disability insurance
benefits.") (internal quotations omitted).

       Third, all indications in the record before the court are that plaintiff's
subsequent application involved a different time period than that in the application
at issue here.  Indeed, as recounted above, plaintiff filed the second application
based on a new diagnosis of neuropathy, and there is every reason to believe the
records submitted in support of the second application, like those in Exhibit B,
pertain to a later time period.  The notice of award in Exhibit A does not state the
basis for the subsequent grant of benefits, but clearly states plaintiff was "found
disabled on March 20, 2014," four months after the date of the ALJ's decision in
this case.  *See* P. Mem., Ex. A at 2.  Thus, without more, there is nothing in the
record to suggest to the court that the evidence considered in the subsequent
application also supports disability earlier than March 20, 2014, much less earlier
than November 13, 2013, the date of the ALJ's decision.

*//*

*//*

1

## V.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: January 7, 2016

_____
SHERI PYM
United States Magistrate Judge